**In re George D. and Kathryn L. BRADDON, Debtors.**

**Bankruptcy No. 85–20794.**

United States Bankruptcy Court, W.D. New York.

Feb. 11, 1986.

Warren H. Heibronner, Rochester, N.Y., for debtors.

Paul S. Groschadl, Rochester, N.Y., for Dow Chemical Co.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtors brought a motion to avoid the fixing of a judicial lien under the authority of 11 U.S.C. § 522(f) before this Court on December 2, 1985. The motion specifically seeks to avoid a $139,469.77 judgment lien by Dow Chemical Company against the debtors which attached to the debtors' personal residence. Dow objects to the avoidance of the lien for any amount in excess of $6,008. The motion was reserved upon allowing all parties two weeks to submit appropriate briefs and documentation.

The debtors filed a petition for relief under Chapter 7, 11 United States Code, on July 10, 1985. The debtors listed as their personal residence and as an asset real property located at 4024 West Lake Road, Canandaigua, New York. The value of that real property as listed on the debtors' petition is $150,000. A subsequent appraisal of the property by a licensed real estate broker and as set forth in the debtors' motion papers places a value on the proper-ty of $155,000. While Dow does not necessarily agree with either valuation, they have not submitted any proof to the contrary.

The real property is also encumbered by two mortgages with a combined outstanding balance of $148,998. The documentation before this Court indicates that both mortgages were properly recorded prior to the recording of Dow's judgment lien. Dow has again offered no proof to dispel the order of recording. The debtors have also claimed the $20,000 New York State homestead exemption as allowed by N.Y. Debt. & Cred.Law §§ 282–84 (Consol.1981) and N.Y.Civ.Prac.Law § 5206 (Consol. 1981).

The issue presented is, under the facts as outlined above, to what extent is the judgment lien of Dow avoided by 11 U.S.C. § 522(f). The pertinent portion of subsection 522(f) reads as follows:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property *to the extent that such lien impairs an exemption* to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien (emphasis added).

Briefly stated, the debtors' position is that because the total of the two mortgages recorded prior in time to Dow's judgment lien plus the debtors' New York homestead exemption ($148,998 + $20,000 = $168,998) exceed the value of the real property ($155,000), Dow's lien is avoided in its entirety by subsection 522(f). Dow disagrees with the debtors' position and argues that the lien may only be avoided to a maximum of the New York homestead exemption—$20,000. Dow's rationale is that the language of subsection 522(f) limits the amount that may be avoided "to the extent that such lien impairs" the exemption.

While Dow cites several cases [1], that appear to support its position, none of those

1. *See, In re Simonson,* 758 F.2d 103 (3rd Cir. 1985); *Alu v. State of N.Y., Dept. of Tax. &*

cases are binding upon this Court. Dow also cites *In re Brown*, 734 F.2d 119 (2nd Cir.1984). *Brown* examined the issues of whether surplus funds totalling $8,667 from a foreclosure sale conducted prior to the bankruptcy petition filing became property of the estate and whether the New York homestead exemption should attach to those funds. The present issue before this Court was not ruled upon by the Second Circuit in the *Brown* decision.

In opposing the debtors' motion, Dow and several of the authorities which Dow rely upon employ one interpretation of the words "to the extent that such lien impairs an exemption" without examining the purpose behind that subsection or one of the basic purposes behind the Bankruptcy Code. The purpose that is ignored is the philosophy that the debtor should be granted a fresh start. The legislative history for subsection 522(f) states the subsection "protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property." *See,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318; S.Rep. No. 989, 95th Cong., 2nd Sess. 76 U.S.Code Cong. & Admin.News 1978, p. 5862. The Supreme Court has stated that the Bankruptcy Act (Code) has a twofold purpose of converting the debtor's estate into cash and distributing the cash to the debtor's creditors and giving the debtor a fresh start. *See, Kokoszka v. Belford*, 417 U.S. 642, 645–46, 94 S.Ct. 2431, 2433–34, 41 L.Ed.2d 374 (1974); *Burlington v. Crouse*, 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913).

The fresh start policy encompasses several concepts. Two of the basic concepts included in fresh start are the entitlement to a determination as to which debts will or will not be discharged and the entitlement to relief from the burden of certain debt obligations. *See, In re Morelock*, 47 B.R. 533, 535 (Bankr.N.D.Ohio 1985). Dow's in-

terpretation of subsection 522(f) would require that its judicial lien would linger on the property for an indeterminate time in the future until the debtors built up sufficient equity in the property. Whether the debtors could ever increase their equity to a position to overcome the judicial lien is speculative. This uncertainty would frustrate the purpose of fresh start by not providing the debtors with an accurate determination as to the finality of their debts and would hinder the debtors' ability to amass future equity.

▮ The correct interpretation of the phraseology of subsection 522(f) which is in question does not limit the avoidance of liens to a maximum of the allowed exemption but avoids only those liens which impair the exemption. In order to determine which liens impair an exemption, it is necessary to perform a three step process. The first step requires a ranking of all liens on the property in order of their priority. The second step involves the subtraction of the appropriate exemption from the value of the property. The final step is to subtract the liens, as ranked by their priority in step one, from the remainder in step two. This three step process would require the avoidance of all liens or any portion of a lien [of the type specified in subsection 522(f)] which exceeded the remainder in step two. *See, In re Princiotta*, 49 B.R. 447 (Bankr. D.Mass.1985); *In re Sajkowski*, 49 B.R. 37 (Bankr.D.R.I.1985); *In re Carney*, 47 B.R. 296 (Bankr.D.Mass.1985); *In re Duncan*, 43 B.R. 833 (Bankr.D.Alaska 1984). The use of this three step process provides certainty to the debtor of the amounts still owing on the property and allows for the future accumulation of equity by the debtors, thus, ensuring the fresh start purpose of the Bankruptcy Code and subsection 522(f).

▮ In applying the three step process to the facts of the present case, Dow's judgment lien must be avoided in its entirety. Step one indicates that Dow has a third

*Finance,* 41 B.R. 955, (E.D.N.Y.1984); *In re Washington,* 41 B.R. 211 (Bankr.E.D.Va.1984);

*In re Fitzgerald,* 29 B.R. 41 (Bankr.E.D.Va.1983).

priority lien following the prior recorded two mortgages totalling $148,998. Step two requires the subtracting of the homestead exemption ($20,000) from the value of the property ($155,000). While two estimates of the value of the property have been provided to this Court, the higher amount will be used in this particular instance because it favors the creditor and is based upon an outside appraisal. The remainder after the subtraction in step two yields $135,000. From the remainder of step two, step three requires the subtraction of the liens in order of their priority. Because the first two priority liens are greater than the remainder of step two, Dow's lien is avoided in its entirety as it impairs the debtors' homestead exemption and it is so ordered.