In re Ronald E. PAYNE, Debtor.

Ronald E. PAYNE, Movant,

v.

CROSSROADS OF HILLSVILLE, Respondent. (Two Cases)

Bankruptcy No. 7–91–02667–HPA–7.

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

July 27, 1994.

Robert T. Copeland, Copeland, Molinary & Bieger, Abingdon, VA, for debtor/movant.

William F. Stone, Jr., Martinsville, VA, for creditor/respondent.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

Before the Court is a Motion filed by Ronald E. Payne ("Debtor") to Avoid a Judi-

cial Lien which was filed against Debtor's real property in Carroll County, Virginia by Crossroads of Hillsville ("Creditor"). Debtor has also filed a Motion to hold Creditor in contempt, alleging a violation of the injunction under 11 U.S.C. § 524. In addition, Creditor has filed a Motion for Sanctions against Debtor's attorney. At the Court's direction, the parties filed their respective authorities, after which the Court took the matter under advisement. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(K) and § 1334. For the reasons hereafter stated, Creditor's and Debtor's Motions for Sanctions and Contempt are denied; and Debtor's Motion to Avoid Creditor's judicial lien on Debtor's real property in Carroll County, Virginia is granted.

On February 16, 1990, Creditor obtained in state court a judgment against Debtor in the amount of $9,290.84 with costs and attorney fees. This judgment was docketed on February 23, 1990 in the Clerk's Office of the Circuit Court of Carroll County, Virginia. At the time of docketing, Debtor owned a residence and property in Carroll County, Virginia which was subject to various prior liens.

On October 21, 1991, Debtor filed a Chapter 7 petition for relief under 11 U.S.C. § 701, *et seq.* In his original schedules, Debtor did not list his residence and property as exempt. However, Debtor did file a homestead deed on November 23, 1993 and, on January 13, 1994, he amended his schedules to claim exempt "any future equity in the house that would exceed $1.00." [1] Upon Debtor's Motion, this Court avoided Creditor's judicial lien on December 11, 1992. Creditor then moved this Court to reconsider and vacate the December 11, 1992 Order and reopen the Motion to avoid Creditor's lien,

alleging lack of notice. On October 5, 1993, Creditor filed a *lis pendens* in the Circuit Court of Carroll County. This Court granted Creditor's Motion, rescinding the December 11, 1992 Order and reopening the Motion on November 24, 1993. Subsequently, Debtor filed the present Motion to Avoid Creditor's Judicial Lien on January 11, 1994.

Upon hearing, it appeared from the evidence that, at the time of filing the petition, local tax appraisals valued Debtor's property at $147,500.00. The evidence also showed Creditor's judicial lien is subordinate to numerous prior liens, namely: a first Deed of Trust to the Bank of Floyd in the amount of $88,362.34; a second Deed of Trust to North Carolina National Bank in the amount of $52,000.00; a judgment lien in favor of Terry's, Incorporated, in the amount of $2,513.16; [2] and a judgment lien in favor of General Parts, Inc., in the amount of $115,473.31. [3] Also at the time of filing, this property was subject to past-due taxes in the amount of $4,500.00. The total amount of liens, including taxes, senior to that of Creditor's is $262,848.81, thus rendering no equity in Debtor's property to support Creditor's lien. In January 1994, Debtor sold this real estate for $185,000.00. [4] Despite the automatic stay, the *lis pendens* caused approximately $10,000.00 of the proceeds from the sale to be held by the buyer's attorney pending resolution of this matter.

As an initial matter, the Court notes that the Bankruptcy Code generally is to be liberally construed in favor of the debtor. *See Williams v. USF & G,* 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Roberts v. W.P. Ford & Son Inc.,* 169 F.2d 151, 152 (4th Cir.1948) (citing *Johnston v. Johnston,* 63 F.2d 24, 26 (4th Cir.1933) and *Lockhard v. Edel,* 23 F.2d 912, 913 (4th Cir.1928)). This universally recognized principle serves to

---

1. Creditor has not filed any objections to the claimed exemption.

2. This Court avoided this judicial lien by order dated December 11, 1992.

3. This judgment was subsequently assigned to Debtor on April 19, 1990. 3R Partners, Inc., a partnership in which two members of Debtor's family are involved, gave Debtor the funds to payoff General Parts, Inc. Debtor then assigned

his rights in the judgment to 3R Partners, Inc., which, in turn, has never released the judgment. This judgment lien was avoided by order of this Court dated December 11, 1992.

4. Debtor testified that between the time of filing his petition and the sale of the property, he had made numerous improvements to the property, thus accounting for the increase in value.

"relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). This same "honest but unfortunate debtor" is thus provided with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. 279, 286, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764, 765 (1991); *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–11, 29 L.Ed.2d 233, 241 (1971); *Local Loan Co. v. Hunt,* 292 U.S., at 244, 54 S.Ct., at 699; *Johnston v. Johnston,* 63 F.2d, at 26; *Royal Indemnity Co. v. Cooper,* 26 F.2d 585, 587 (4th Cir.1928).

This Court, upon trial of this matter, heard the evidence including the testimony of the witnesses. It observed the candor, demeanor, truthfulness, and forthright testimony of witnesses as well as their credibility and makes the findings and conclusions herein.

█ To aid the debtor in his "fresh start," the Bankruptcy Code provides that a debtor may avoid the fixing of a judicial lien on an interest of the debtor in property to the extent that the lien impairs an exemption to which the debtor would otherwise have been entitled. 11 U.S.C. § 522(f)(1); *see also Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). Thus, a judicial lien must be avoided if it impairs a debtor's exemption. *In re Opperman,* 943 F.2d 441 (4th Cir.1991).

Although § 522(d) lists exemptions available to a debtor under federal law, Virginia has enacted its own exemption scheme pursuant to 11 U.S.C. § 522(b)(2)(A). See Virginia Code Ann. § 34–1, *et seq.* Under Virginia's homestead exemption, "every householder, shall be entitled ... to hold from creditor process arising out of a debt, real and personal property, or either, to be selected by the householder, including money and debts due the householder not exceeding $5,000.00 in value." *Id.* at § 34–4. In order

to secure the benefit of Virginia's homestead exemption, the householder must file a homestead deed. *Id.* at § 34–6.

█ In determining which liens impair an exemption under § 522(f), the Court notes the order of priority of the liens on the property. *In re Braddon,* 57 B.R. 677, 679 (Bankr.W.D.N.Y.1986). Subtracting the available exemption from the value of the property, the Court then subtracts the liens, by order of their priority, from the value of the property. *Id.* After this process is completed, any liens that exceed the value of the property must be avoided.[5] *Id.;* see also *In re Kruger,* 77 B.R. 785, 788 (Bankr.C.D.Cal. 1987). This process under § 522(f) is significant in assuring that debtors gain a "fresh start" in their financial lives. *In re Galvan,* 110 B.R. 446 (9th Cir. BAP 1990). This concept of a "fresh start" includes reaping the fruits of post-petition appreciation of the debtor's real estate. *Id.* As one court has said:

> "The debtors' 'fresh start' as provided by the Bankruptcy Code would be undermined by allowing the (creditor's) lien to subtly lie in ambush until after bankruptcy and suddenly, when the debtors accumulate equity, the (creditor) goes on the attack."

*In re Gunter,* 100 B.R. 311, 314 (Bankr. E.D.Va.1989).

█ In the present case, Creditor's judgment lien was not supported by any equity in Debtor's property at the time of the filing of Debtor's petition in this Court. To allow such a lien to remain in place would not only impair any exemptions to which Debtor would have been entitled, thus violative of § 522(f), but would also undermine the "fresh start" secured to Debtor by the provisions of the Bankruptcy Code. To the extent Creditor's judicial lien impairs Debtor's exemption, it must be avoided, for, if not, the intended benefit of the homestead exemption itself would be lost. Any remaining portion of Creditor's lien must also be avoided as lack-

---

5. Under 11 U.S.C. § 506(a), a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured. *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026,

103 L.Ed.2d 290 (1989). 11 U.S.C. § 506(d) allows a bankruptcy court to avoid liens that exceed the value of the collateral. *See In re Galvan,* 110 B.R. 446 (9th Cir. BAP 1990).

ing the supportive equity needed at the time of the filing of Debtor's petition and Debtor's opportunity for a "fresh start" will be frustrated unless he is entitled to avoid Creditor's judicial lien in its entirety. *See* 11 U.S.C. §§ 105, 506, 552, 727, 545 and Rules 3012, 4003, 4004, 6010 and 7001, *et seq.*

■ Debtor has also filed a Motion for Contempt and Creditor has filed a Cross Motion for Sanctions against Debtor's attorney. This Court recognizes the adversarial nature of these proceedings and believes that good faith predominates. As such, both motions are denied.

■ This Court finds it appropriate to note that an alleged lien upon property of a debtor without equity supporting same as of the date the petition is filed is a general unsecured claim discharged by the debtor's discharge order under section 727 and enjoined therein from collection. The discharge order (Form 18) provides that any judgment obtained heretofore or hereafter is void as a determination of personal liability of a debtor. A judgment docketed as a lien, not supported by equity, is a judgment only of personal liability and the order specifically enjoins all creditors whose claims are such from seeking collection.

Sections 105 and 506, as well as Rules 4004 and 7001, implement the procedure which was the basic pre-Code law in 1978. *See Seaboard Small Loan, etc. v. Ottinger,* 50 F.2d 856 (4th Cir.1931).

In the *Seaboard* case, creditor sought to subject post-petition wages of a debtor to the lien of assignment. The late distinguished Judge Parker, in holding that such acts were enjoinable as no lien existed, wrote:

Coming to the question of jurisdiction, we entertain no doubt as to the power of the court below to grant the relief prayed. The Bankruptcy Act § 17 expressly provides that, with certain specified exceptions, a discharge in bankruptcy shall release a bankrupt from all of his provable debts. 11 U.S.C.A. § 35. And as said by the Supreme Court in *Chicago, B. & Q. R.R. v. Hall,* 229 U.S. 511, 515, 33 S.Ct. 885, 886, 57 L.Ed. 1306, it was "intended not only to secure equality among credi-

tors, but for the benefit of the debtor in discharging him from his liabilities and enabling him to start afresh with the property set apart to him as exempt." "The determination of the status of the honest and unfortunate debtor by his liberation from encumbrance on future exertion is matter of public concern," said Chief Justice Fuller in *Hanover Nat. Bank v. Moyses,* 186 U.S. 181, 192, 22 S.Ct. 857, 862, 46 L.Ed. 1113.

In view of this purpose of the act and of the express provision that the bankrupt shall be released from all provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it. It will not do to say that the bankrupt has an adequate remedy at law by pleading the discharge in case of suit, or by suing an employer if the latter withholds wages under an order such as that here. Such remedy is not adequate, because its assertion involves *trouble, embarrassment, expense, and possible loss of employment.* A laboring man who had availed himself of the benefits of the act would in many cases prefer to pay a debt discharged by bankruptcy rather than hazard his employment by bringing suit for wages withheld under notice like that with which we are dealing. And an employer in many cases would prefer to discharge an employee against whom a claim had been filed rather than engage in litigation with the claimant. The demand under an assignment order, in an effort to collect a debt discharged by bankruptcy, is nothing less than an attempt to circumvent the order discharging same and to deprive the bankrupt of the benefit of that order. It was to meet situations such as this that the bankruptcy court was vested with the general power under section 2, subsection 15 of the Bankruptcy Act (11 USCA § 11(15) to "make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title." As said by

Judge Van Valkenburgh in the *Swofford Bros. Dry Goods Co.,* Case (D.C.) 180 F. 549, 553: ".... This section may be availed of to compel anything which ought to be done for, or to prevent anything which ought not to be done against the enforcement of the law; provided the court of bankruptcy otherwise has jurisdiction of the person or the subject-matter. For such purposes the court has the plenary powers of a court of equity and can exercise the powers of such a court for the ascertainment and enforcement of the rights and equities of the various parties interested in the estate of the bankruptcy company."

In the case of the *[In re]* *Home Discount Company,* [ (D.C.Ala.1906) 147 F. 538] *supra,* it was held directly that the court had the power exercised by the court below, and the discount company was fined for contempt of court because it failed to withdraw a notice of assignment filed with the employer of bankrupt. What was said by Judge Jones in that connection is pertinent here. Said he: "The filing of the assignment of the wages with the bankrupt's employer the day after the adjudication was an effort to embarrass the administration of the estate, and to force the bankrupt by the sore pressure caused by withholding the wages to pay an illegal demand, from which a discharge would free him. It was nothing more than an effort to starve him into abandonment of his right under the law, in defiance of the orders made to enforce those rights. If a court of bankruptcy has *no power* to prevent creditors from making such use of assignments of wages, it had as well shut its doors, and abandon all effort to vindicate the rights which the statutes commit to its protection. The law does not make such weaklings of courts of bankruptcy. They have ample power to protect the bankrupt in the enjoyment of all his rights, and to frustrate the efforts of those who seek to defeat the practical enjoyment of them." 50 F.2d at 859–860. (emphasis added)

The foregoing text is recited fully because it points out the pre-Code law and nowhere did the Congress demonstrate an intent or effort to dilute the debtor's rights and benefits under the new Bankruptcy Code. The legislative history clearly shows that Congress intended to strengthen and broaden debtor's rights to a fresh start. This is clear from the section 362 automatic stay and the injunctive provisions in the discharge order which eliminated any need of the debtor having to proceed in state or other court to obtain relief. *See* Va.Code § 8.01–455.

■ Accordingly, under present Rules and Code provisions, it is unnecessary for debtors to litigate equity injunction proceedings as in *Seaboard* to effect their rightful remedies. Congress provided that the discharge order shall enjoin unsecured, discharged creditors from so proceeding. Also, it gives this Court the power referred to in *Seaboard* to adjudicate whether or not a creditor's claim is unsecured and, hence, discharged under the discharge order.

■ Therefore, the issue of exemptions or exempt property is not the only remedy available to debtors in the area of lien avoidance and nullification. If a judgment or lien on debtors' property has no property or equity support, it is unsecured and discharged by the order of discharge.

Therefore, based on the evidence before this Court, and for the foregoing reasons, IT IS ORDERED that Debtor's Motion to Avoid Creditor's Lien is granted; Debtor's Motion for Contempt is denied; and Creditor's Motion for Sanctions is denied.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor; counsel for Debtor; counsel for Crossroads of Hillsville/Creditor; Trustee; and U.S. Trustee.