In re Irene VIZENTINIS, Debtor.

Bankruptcy No. 194–11982–352.

United States Bankruptcy Court,
E.D. New York.

Dec. 23, 1994.

George Poulos, Astoria, NY, for debtor.

Paul Crotty, Corp. Counsel of City of New York by Helene Rosenthal Jaffa, New York City, for Commission on Human Rights.

David Doyaga, Chapter 7 trustee, Brooklyn, NY.

### Decision on Motion to Avoid a Judicial Lien

MARVIN A. HOLLAND, Bankruptcy Judge:

The debtor, Irene Vizentinis (hereinafter, the "Debtor"), moves pursuant to 11 U.S.C. § 522(f) to avoid a judicial lien as impairing her homestead exemption under New York Civil Practice Rules and Procedure (hereinafter, "CPLR") Section 5206(a) and New York Debtor and Creditor Law (hereinafter, "DCL") Section 282. The City of New York (hereinafter, the "City"), on behalf of a judicial lien holder, Francisco Caballero (hereinafter, "Caballero"), objects on the grounds that only a portion of the Debtor's property is entitled to the exemption, and therefore the judicial lien may be avoided only as to a portion of her property. We hold that the judicial lien held by Caballero may be avoided in its entirety.

This proceeding is subject to the bankruptcy court's jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a) and the Order of Referral of Matters to Bankruptcy Judges of this district. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

*FACTUAL BACKGROUND*

The Debtor filed a Chapter 7 petition for relief on March 15, 1994. She is the owner of a parcel of real property located and known as 22–38 41st Street, Astoria, New York (hereinafter, the "Property"), upon which is located a building with four apartments, one of which is occupied by her as her principal residence. She claims a $10,000 exemption in the property pursuant to CPLR § 5206 and DCL § 282.

An undisputed appraisal attached to the moving papers values the Property at $210,-000. The Property is encumbered by: (1) three mortgages totaling approximately

$207,000, (2) the judgment lien which the New York City Commission of Human Rights (hereinafter, the "Human Rights Commission") obtained on behalf of Caballero in the amount of $12,906 [1], and (3) other judgment liens with equal priority to Caballero's. Pursuant to CPLR § 5203(a), Caballero's judgment which has been duly docketed became a lien on the Property in the amount of $12,906. The total of the mortgages and all of the judicial liens on the Property is $232,281.84.

## APPLICATION OF THE EXEMPTION

11 U.S.C. § 522(f) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is (1) a judicial lien ...

Pursuant to 11 U.S.C. § 522(b)(1), New York, by DCL § 284, has restricted its domiciliaries to the exemptions provided for under state law and federal law, other than 11 U.S.C. § 522(d).

DCL § 282 provides in relevant part:

under [11 U.S.C. § 522] an individual debtor domiciled in this state may exempt from the property of the estate, to the extent permitted by subsection (b) thereof, only (i) ... real property exempt from application to the satisfaction of money judgments under sections ... [5206 of the CPLR] ...

CPLR § 5206 provides:

(a) Exemption of Homestead. Property of one of the following types, not exceeding ten thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:

   1. a lot of land with a dwelling thereon ...

---

1. It is undisputed that this judgment was not for a debt specified in 11 U.S.C. §§ 523(a)(1) or 523(a)(5).

2. No method of allocation is suggested by the City. For example, allocation could be on a "per

The Property is a "lot of land with a dwelling thereon" notwithstanding the three apartments occupied by other persons. Although "dwelling" is not defined in the CPLR, it is defined in *Black's Law Dictionary*, 454 (5th ed. 1979) as "[t]he house *or other structure in which a person or persons live* ..." [emphasis added]. New York State's Multiple Dwelling Law § 4, sub'd 4, defines "dwelling" as "any building or structure or portion thereof which is occupied in whole or in part .as the home, residence or sleeping place of one or more human beings."

Under both of these definitions, the Property constitutes a lot of land with a "dwelling" thereon. Moreover, it is undisputed that the Property is "owned" by the Debtor and that the Debtor's principal residence is an apartment within the Property. Therefore, the Debtor meets the requirements of the statute.

Although it is not entirely clear from the City's papers submitted in opposition, it appears that while the City concedes that the Property qualifies for the $10,000 homestead exemption, it maintains that the exemption applies only as to that portion of the Property that is occupied by the Debtor as her residence. Accordingly, for purposes of this motion, the City would have this Court apply the entire $10,000 homestead exemption exclusively to the unit occupied by the Debtor. The City would then have us allocate a portion of the value of the mortgages encumbering the Property and the Caballero judicial lien to the apartment which is occupied by the Debtor, and the remaining value of the mortgages and the Caballero judicial lien would be allocated to the remainder of the Property.[2] No portion of the homestead exemption would be allocated to the part of the Property not occupied by the Debtor, and therefore the amount of the Caballero judicial lien allocated to those units would not be avoided.

---

unit" (i.e., 25% of the value of the mortgages and judicial liens would be allocated to each of the four apartments) basis, an "area" basis or a "market value" basis to name just a few.

To support its argument, the City cites the decision in *In re Hager*, 74 B.R. 198 (Bankr. N.D.N.Y.1987), *aff'd*, 90 B.R. 584 (N.D.N.Y. 1988), where the debtor used approximately thirteen percent of the square footage of his personal residence for a chiropractic office. The *Hager* court held that the homestead exemption did not apply to the thirteen percent of the debtor's residence which was used for business purposes and applied the entire $10,000 homestead exemption to the remaining portion of the debtor's property.[3]

■ Based on the plain language of CPLR § 5206, we respectfully disagree with *Hager* and reject the City's contention that the entire homestead exemption should be applied to only that portion of the Property in which the Debtor resides. To grant the City's request would constitute the creation of a *de facto* condominium.[4] As we read the CPLR, the homestead exemption applies to all real property which consists of a lot of land with a dwelling thereon owned by a debtor and occupied by a debtor as a principal residence. There can be no question that the Property meets these requirements. The City's assertion and the allocation scheme devised by the

*Hager* Court reads into the language of CPLR § 5206 the word "exclusively" both before and after the word "occupied". We perceive, neither need nor authority to so rewrite the statute. Based upon the language of CPLR § 5206, we believe that we must simply ask ourselves whether the real property in question, which is a lot of land with a dwelling thereon, is "occupied as a principal residence".[5] The question answers itself in the affirmative. We see nothing in CPLR § 5206 which limits the homestead exemption to only that portion of the lot of land which is *entirely* occupied *exclusively* as a principal residence.[6]

## LIEN AVOIDANCE APPLICATION

Having determined that the Property qualifies for the homestead exemption, we must determine the extent, if any, to which the judicial lien of Caballero impairs the Debtor's homestead exemption, and thus the extent to which his lien may be avoided.

■ As set forth above, the Debtor has only a $3,000 equity, and therefore the Caballero judicial lien impairs her $10,000

---

3. Thereafter, the *Hager* Court determined the equity in the portion of the property allocated to business purposes and held that the judicial lien in question could not be avoided to the extent of this equity.

4. How Caballero would execute upon the three units to which the City would not have the exemption apply seems not to have been thought out. How, for instance, would a purchaser obtain units without direct access to the exterior. Would such purchaser obtain title to the attic, hallways, and basement. Who would supply heat to the building; if the purchaser, what would be the Debtor's obligation to share in its cost. Under such circumstances, the likelihood of anyone purchasing at an execution sale of one or more of those units not receiving the exemption would be so remote as to create for the debtor a *de facto* exemption in the entire premises.

5. A similar issue arises in chapter 13 cases where a debtor attempts to modify the rights of a secured creditor with a security interest in real property owned by the debtor which includes both the debtor's principal residence and rental units when the secured creditor asserts that 11 U.S.C. § 1322(b)(2) prohibits such modification. *See, e.g., In re McGregor*, 172 B.R. 718 (Bankr. D.Mass.1994) (and cases cited therein). In

*McGregor*, the Court determined that the real property in question, which included the debtor's principal residence and three income-producing units, was not "real property that is the debtor's principal residence" for purposes of 11 U.S.C. § 1322(b)(2). The *McGregor* Court based its holding on what it perceived to be the plain meaning of 11 U.S.C. § 1322(b)(2). Again, we respectfully disagree.

6. Furthermore, the City's request would lead to problems not considered in their papers. How do we deal with a homeowner who rents out one or more rooms on a permanent basis, or who rents out one or more rooms on an occasional basis, or who rents some rooms on a permanent basis and also rents out one or more rooms on an occasional bases, or who permits a close friend or a relative to occupy one or more rooms on a semi permanent basis without paying rent, or who regularly receives "rent" or other assistance from her spouse or resident working child? The Code does not deal with any of these permutations, presumably leaving them to state law. We have been unable to find any reported New York case addressing any of these situations. Absent compelling precedent to the contrary, we prefer to base our decision upon a policy of interpreting exemptions broadly in order to provide the fresh start for which the debtor properly sought her title 11 relief.

homestead exemption. As the Court in *In re Prestegaard,* 139 B.R. 117, 118 (Bankr. S.D.N.Y.1992) (*quoting* Bowmar, *Avoidance of Judicial Liens that Impair Exemptions in Bankruptcy: The Workings of 11 U.S.C. § 522(f)(1),* 63 Am.Bank.L.J. 375, 387 (1989)) noted: "[i]ndeed, [an] exemption would be impaired by any lien where the debtor's equity is greater than zero but less than the exemption amount of $ 10,000."

The literature on the method of determining the extent to which a judicial lien may be avoided to prevent exemption impairment is extensive and lacks cohesive uniformity. Nothing would be served by a further review of existing authorities.[7] Recent amendment to 11 U.S.C. § 522(f) contained in Section 303 of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (1994)[8] attempts to resolve the differing approaches to this problem.

It is sufficient to state that for cases not covered by the 1994 amendments, we believe the proper interpretation of 11 U.S.C. § 522(f)(1) was enunciated in *In re Serapiglia,* 123 B.R. 481, 488 (Bankr.E.D.N.Y.1990) where Judge Goetz held that a debtor is entitled to avoid judicial liens to the extent that "they exceed present fair market value of [the debtor's] interest reduced by unavoidable encumbrances and the debtor's homestead exemption." *See also In re Cohen,* 13 B.R. 350, n. 8 (Bankr.E.D.N.Y.1981). Under this interpretation, a judicial lien is avoidable to the extent that the lien exceeds the debtor's equity in the property less the homestead exemption. Stated differently, the judicial lien survives only to the extent that a debtor's equity results in a surplus after deducting the homestead exemption. This interpretation maintains the debtor's full exemption by insuring that the judicial lien which survives can in no way adversely affect the homestead exemption.[9] In this case, since the Debtor's equity ($3,000) does not exceed the homestead exemption, the entire amount of the Caballero's judicial lien is avoidable by the Debtor[10] because any amount that would otherwise survive would impair the Debtor's exemption.[11]

*CONCLUSION*

Pursuant to the plain meaning of CPLR § 5206, the Debtor is entitled to a $10,000 homestead exemption for the Property. The judicial lien held by Caballero impairs the Debtor's homestead exemption and is avoidable in its entirety.

Debtor's attorney shall settle an Order within ten (10) days.

---

7. For an excellent discussion regarding the numerous cases interpreting 11 U.S.C. § 522(f) prior to the Bankruptcy Reform Act of 1994, *see* Bowmar, *supra.*

8. Pursuant to section 702, the amendments to § 522(f)(1) do not apply to cases filed prior to its effective date.

9. For example, assume the following facts: (1) the fair market value of the debtor's property is $200,000, (2) nonavoidable mortgages encumbering the property total $175,000, (3) judicial liens total $50,000. Based on these facts, under *In re Serapiglia,* the lien would survive to the extent of $15,000 and be avoided in the amount of $35,000 [market value less mortgages less homestead exemption of $10,000].

10. Subtracting $10,000 (the exemption) from the $3,000 of equity results in a negative number. Therefore, the entire judicial lien exceeds the "present fair market value of [the debtor's] interest reduced by unavoidable encumbrances and the debtor's homestead exemption" and is therefore avoidable. *In re Serapiglia,* 123 B.R. at 488.

11. Although the amendments enacted by the *Bankruptcy Reform Act of 1994* are not applicable to this case, had they been, the results would be the same.