**In re Dale E. HANGER and Sandra S. Hanger, Debtors.**

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant,**

v.

**Dale E. HANGER; Sandra S. Hanger; Thomas H. Casey, Chapter 7 Trustee; U.S. Trustee; Wells Fargo Bank, N.A.; Pacific Alternator & Starter, Inc., Appellees.**

**BAP No. CC–97–1179–OHaJ.**

**Bankruptcy No. SA 96–19988 LR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 17, 1997.

Decided Nov. 17, 1997.

Gary Tokumori, Ivanjack & Lambirth, Los Angeles, CA, for Bank of America NTSA.

Fritz J. Firman, Law Offices of Joseph A. Weber, Santa Ana, CA, for Dale E. and Sandra Hanger.

Before: OLLASON, HARGROVE [1] and JONES, Bankruptcy Judges.

---

1. Hon. John J. Hargrove, Bankruptcy Judge for the Southern District of California, sitting by designation.

*OPINION*

OLLASON, Bankruptcy Judge.

Bank of America National Trust and Savings Association ("bank") appeals an order allowing Dale and Sandra Hanger ("Debtors") to avoid its judicial lien in its entirety. The bank contends that its lien only partially impaired Debtors' homestead exemption and that § 522(f) [2] would allow the partial avoidance of the lien. We REVERSE and REMAND.

## STATEMENT OF FACTS

The pertinent facts are undisputed.

Debtors filed a voluntary Chapter 7 on August 26, 1996. Debtors owned a home which the bankruptcy court determined was worth $270,000, according to Debtor's subsequent appraisal. Debtors claimed a $75,000 homestead exemption pursuant to California law which was not contested.

On November 11, 1996, Debtors filed a motion to avoid judicial liens impairing their homestead exemption. The total liens on the property, rounded off and in order of their priority, was as follows:

| | |
|---|---|
| Consensual lien | $158,000 |
| Pacific Alternator judicial lien | 3,817 |
| Bank of America judicial lien | 92,565 |
| Wells Fargo judicial lien | 32,843 |

The bank objected to the motion and requested a hearing. Based on their calculations, the lien of Pacific Alternator could not be avoided, and the bank's lien could be partially avoided.

Debtors replied that a lien which impairs the homestead exemption "in any way whatsoever" can be avoided in its entirety.

The hearing took place on February 25, 1997, at which time the bankruptcy court determined the property value of $270,000, which the bank has accepted for purposes of this appeal. Applying § 522, the bankruptcy court made calculations as follows:

(1) adding the consensual lien and the exemption yielded a sum of $233,000 ($158,000 + $75,000);

---

2. Unless otherwise indicated, references to "Chapter," "Section/ § ," or "Code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

(2) subtracting $233,000 from the property value of $270,000 yielded an equity of $37,000;

(3) taking the first priority judicial lien of Pacific Alternator of $3,800: that lien could not be avoided because it was less than the total equity;

(4) subtracting $3,800 from $37,000 yielded an equity balance of $33,200;

(5) taking the Bank's lien of $92,600: that lien exceeded the equity balance by $59,400 [3] ($92,600 − $33,000). In other words there was only enough equity to secure the $92,600 lien up to $33,000.

The bankruptcy court noted that prior to the Bankruptcy Reform Act of 1994 and the amendment to § 522, the court would be allowed to avoid part of a lien and let part of a lien survive. (Citing *In re Chabot*, 992 F.2d 891 (9th Cir.1993)). Since Congress intended for the amendment to overrule *Chabot*, the court concluded that the full value of the Bank's lien was avoidable if it impaired the exemption at all. The court also determined that the third priority lien of Wells Fargo was avoidable in its entirety. Separate orders avoiding each lien were entered on March 19, 1997. The Bank timely appealed.

### ISSUE

Whether the resulting calculation under § 522(f)(2) to determine the "extent that [the Bank's] lien impair[ed] an exemption" required the avoidance of the bank's lien in its entirety.

### STANDARD OF REVIEW

This appeal raises questions of statutory interpretation which are reviewed *de novo*. *In re Higgins*, 201 B.R. 965, 966 (9th Cir. BAP 1996).

### DISCUSSION

Section 522(f)(1) provides that a debtor may avoid the fixing of judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section." Section 522(f)(2) provides a means to calculate how a lien impairs the exemption, as follows:

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption *to the extent that* the sum of—

(i) the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522 (1994) (emphasis added).

The debtor's avoiding power is limited "in that it may be employed 'only to the extent that the lien impairs the debtor's exemption.'" 4 COLLIER ON BANKRUPTCY § 522.11[1] at 522–74 (15th ed.1997). Section 522(f)(1) was not intended to free the debtor's property of judicial liens altogether; rather it was intended to preserve the debtor's exemption. The legislative history of this section provides:

Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6318.

Section 2 was added in 1994 to define the words "impair an exemption" in § 522(f)(1). "This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption, based upon a decision, *In re Brantz*, 106 B.R. 62 (Bankr.E.D.Pa. 1989), that was favorably cited by the Supreme Court in *Owen v. Owen*, 500 U.S. 305, 313, n. 5, 111 S.Ct. 1833, 1838, n. 5, 114

---

**3.** The hearing transcript shows that the court incorrectly calculated this figure as $49,400, but the difference is immaterial.

L.Ed.2d 350 (1991)." H.R.Rep. 103–834, 103rd Cong., 2nd Sess. 35–37 (October 4, 1994); 140 Cong.Rec. H10769 (Oct. 4, 1994). *See In re Wilson*, 90 F.3d 347, 350 (9th Cir.1996) (subsection 522(f)(2)(A) sets forth a formula to determine whether a lien impairs an exemption).

■  Applying this formula to the facts of this case, we can determine that the bank's lien impairs Debtors' exemption:

```
Sum of:  the lien . . . . . . . . . . . . . . . $ 92,565
         all other liens . . . . . . . . . .  158,000
                     . . . . . . . . .    3,817
                     . . . . . . . . .   32,843
         the exemption . . . . . . . . .   75,000
                                        $362,225
```

The sum of $362,225 exceeds the value of Debtors' interest in the property in the absence of any liens, or $270,000. Therefore, the bank's lien impairs the exemption. The question before the Panel, however, is *to what extent* the lien impairs the exemption and must be avoided. The plain meaning of the statute provides that the lien impairs the exemption "to the extent that the sum of [the liens and exemption] exceeds the value that the debtor's interest in the property would have in the absence of any lien." In the present case, the extent of impairment is $362,225 minus $270,000, or $92,225. The judicial liens may be avoided to that amount.

Applying the formula requires that the liens be subtracted in order of reverse priority and that those which are avoided not be included in the calculation. Section 522(f)(2)(B). The most junior lien is Wells Fargo's lien of $32,843. Since $32,843 is less than $92,225, it can be avoided in its entirety.

Now, the formula requires a new calculation which would eliminate the lien that has been avoided. To determine the extent to which the bank's lien impairs Debtors' exemption, the formula is as follows:

```
The sum of:  the bank's lien . . . . . . $ 92,565
             all other liens not
                avoided . . . . . . . . . .  158,000
                        . . . . . .    3,817
             the exemption . . . . . .   75,000
                     TOTAL: . . . . . . . $329,382
```

The extent to which the liens impair Debtors' exemption is $329,382 minus $270,000, or $59,382, and that amount may be avoided. The amount of impairment does not exceed the amount of the bank's lien sought to be avoided. Thus, the bank's lien of $92,565 may be avoided only to the extent of $59,382 because that is the extent of the impairment of the exemption by the bank's lien. The bank retains a lien of *$33,183* ($92,565 − $59,382).

We will show how this result would be the same under the full avoidance formula of *Brantz*, 106 B.R. at 68, which was as follows:

1.  Determine the value of the property on which a judicial lien is sought to be avoided. **$270,000**

2.  Deduct the amount of all liens not to be avoided (all non-§ 522 liens) from (1). **$270,000 − $158,000 = $112,000.**

3.  Deduct the allowable exemption. **$112,000 − $75,000 = $37,000.**

4.  Avoidance of all judicial liens results unless (3) is a positive figure. **N/A.**

5.  If (3) does result in a positive figure, does not allow avoidance of liens, in order of priority, to that extent only.

**$37,000 minus $3,817 lien of Pacific Alternator yields $33,183. The Bank's lien cannot be avoided up to *$33,183*. The amount that can be avoided is *$59,382* ($92,565 minus $33,183).**

In a recent case, the Bankruptcy Appellate Panel ("BAP") affirmed the bankruptcy court's avoidance of a lien in its entirety. *See Higgins, supra.* The BAP held that where the sum of all the liens and the hypothetical value of the exemption without liens exceeded the value of the debtor's interest in the property in the absence of liens, the debtors were entitled to avoid the lien. *Higgins*, 201 B.R. at 967–68. There, the sum was $120,181, which exceeded the value of the debtors' interest, which was $103,000, by $17,181. Since $17,181 was the amount of the impairment, liens up to that amount could be avoided. *Id.* The only judicial lien of $2,097.16 was less than the impairment amount, and was properly avoided in its entirety. *See also In re Jakubowski*, 198 B.R. 262, 264 (Bankr.N.D.Ohio 1996) (avoiding lien in its entirety where the amount of impairment under § 522(f) was greater than the amount of the lien sought to be avoided in full).

Another recent BAP case has suggested *in dicta* that the Bankruptcy Reform Act allows the avoidance of the unsecured portion of a lien to the extent that the lien exceeds the value of the surplus equity.[4] *In re Nielsen,* 197 B.R. 665, 669 n. 3 (9th Cir. BAP 1996). This was the case in *Brantz,* where the surplus equity was found to be $12,200; the lien of $28,441.17 was held to be avoidable in the amount of the remainder after subtracting the lien from the surplus equity, or about $16,200. In the present case, there is surplus equity of $37,000 ($270,000 minus $158,000 and $75,000). Therefore, after the senior lien is deducted, leaving an equity of $33,183, the Bank's lien is avoidable to the extent of $59,382, as figured above. *Accord In re Kerbs,* 207 B.R. 211, 215–16 (Bankr.D.Mont. 1997); *In re Todd,* 194 B.R. 893, 897–98 (Bankr.D.Mont.1996); *In re Moe,* 199 B.R. 737, 739–40 (Bankr.D.Mont.1995).

Before the 1994 amendment, two major approaches for determining impairment emerged—full avoidance and partial avoidance. Under the full avoidance approach, as used in *Brantz,* the only way a lien would be avoided "in full" was if the debtor's gross equity[5] were equal to or less than the amount of the exemption. *See Brantz,* 106 B.R. at 68 (gross equity of $27,000 exceeded exemption amount of $15,800); *In re Carney,* 47 B.R. 296, 299 (Bankr.D.Mass.1985) ($24,000 in gross equity; $12,500 exemption; remainder of $11,500 for judicial liens, "all or any portion" of which was to be avoided). *See also In re Vizentinis,* 175 B.R. 824, 827 & n. 11 (Bankr.E.D.N.Y.1994) (avoiding judicial lien in full where gross equity ($3,000) was less than exemption amount ($10,000), and stating that the result would be the same under the Bankruptcy Reform Act); *In re Magosin,* 75 B.R. 545, 549–50 (Bankr.E.D.Pa. 1987) (where equity was less than exemption, judicial lien was avoidable in its entirety). Compare this case, where the gross equity of $108,183 ($270,000 minus $158,000 minus 3,817) is greater than the exemption amount

of $75,000. Under the full avoidance approach, the bank's lien could not be avoided in its entirety.

The 1994 amendment adopted the full avoidance approach and the formula given is simply a restatement of the *Brantz* formula. This formula is more favorable for debtors by allowing them the full benefit of the exemption and the benefit of any post-avoidance appreciation in the value of the property. *See In re Witkowski,* 176 B.R. 114, 115, 117–18 (Bankr.D.Mass.1994); H.R.Rep., *supra.*

The 1994 amendment also did away with the partial avoidance method, which generally defined impairment as not exceeding the amount of the exemption. *See In re West,* 68 B.R. 647, 648–49 (Bankr.C.D.Cal.1986); *In re D'Ambrosia,* 61 B.R. 588, 590 (Bankr.N.D.Ill. 1986). Thus, it was possible that an unsecured portion of the lien would be left intact to remain after discharge, attach to postpetition appreciation and impair the debtor's fresh start. *In re Galvan,* 110 B.R. 446, 451–52 (9th Cir. BAP 1990) (reversing order which avoided lien to amount of exemption but left remainder unaffected where there was no surplus equity).

In the midst of much diversity in the application of former § 522, the Ninth Circuit Court of Appeals changed the course of partial avoidance cases in its *Chabot* opinion. The creditor in *Chabot* had a lien of $241,579. The debtors' residence was valued at $400,000. There was a first deed of trust in the amount of $86,412 and a second deed of trust in the amount of $38,540. The debtors claimed a $45,000 homestead exemption. To figure impairment, the Court of Appeals deducted the deeds of trust and the exemption from the value of the home and found that there was a surplus equity of $230,046. *Chabot,* 992 F.2d at 894. Although the judicial lien exceeded the surplus equity by about $11,000, the Court of Appeals determined that because there was surplus equity, the

---

4. For purposes of this disposition, surplus equity is defined as the remainder after subtracting the consensual liens, and the exemption amount, in the absence of any liens, from the value of the debtor's interest in the property. *See Chabot,* 992 F.2d at 894.

5. For purposes of this disposition, "gross equity" is calculated as the value of the property less the nonavoidable liens and less any senior avoidable liens. Gross equity does not include a deduction of the exemption amount.

debtors' exemption was not impaired since the exemption was not diminished in value. *Id.* at 895. Thus, the entire lien could not be avoided, and the debtors were not entitled to realize any appreciation short of selling the property and investing the proceeds. *Id.* at 895–96.

The bankruptcy court in this appeal was concerned that it did not apply the law that was rejected by the Bankruptcy Reform Act, *i.e.*, partial avoidance or *Chabot*. Let's apply the *Chabot* approach to the facts of this case. Under *Chabot*, we would look at the surplus equity. We subtract the amount of the consensual lien ($158,000) plus the exemption ($75,000), or a sum of $233,000, from the value of the property, or $270,000. The remainder is $37,000 in surplus equity. Therefore, the lien could not be avoided at all. That is not the result we propose herein. *See In re Hastings,* 185 B.R. 811, 814 n. 3 (9th Cir. BAP 1995) (new provision "entitles the debtor to avoid a judgment lien in cases where equity has not yet accrued, overruling *In re Chabot* ").

Congress was concerned because the *Chabot* holding meant that any postpetition appreciation would go to the benefit of the lienholder whose partial lien remained on the property, even if the debtor had to use his exempt interest to make the mortgage payments. H.R.Rep., *supra.* The new formula would protect the debtor's interest in any appreciation because it would not allow a lien to remain when there was no equity, but hypothetically there would be equity in the absence of the liens. *See Owen v. Owen,* 500 U.S. 305, 311, 111 S.Ct. 1833, 1837, 114 L.Ed.2d 350 (1991) (§ 522(f) "establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor *'is* entitled,' but one to which he *'would have been* entitled.' ") (emphasis in original). *Cf. Chabot,* 992 F.2d at 895 (holding that an exemption is not impaired unless its amount is diminished in value). Therefore, one need only apply the new formula to obtain Congress' desired result.

Congress gave an example in the legislative history of the 1994 amendment of how the new § 522(f) formula would change a *Chabot* situation where the lien was partially secured. The example was of a debtor with a house worth $50,000, encumbered by a mortgage of $40,000, a judicial lien of $20,000, and entitled to an exemption of $10,000.

Applying *Chabot,* $50,000 minus $40,000 minus the $10,000 exemption yields zero. Since there is no surplus equity, the lien impaired the exemption and could be avoided to the extent it impaired the exemption. According to *Chabot,* the lien could only impair the exemption to the extent to diminished the exemption, thus, a $20,000 lien would diminish a $10,000 exemption by $10,000. Therefore, only $10,000 of the lien could be avoided. Likewise, applying a simplified partial avoidance method to the same example, the full amount of the exemption could be avoided, or $10,000, leaving a lien of $10,000. Both the *Chabot* result and the partial avoidance result of leaving a $10,000 lien was sought to be reversed by the new § 522(f) formula.

Applying the "full avoidance" formula of *Brantz* and the new § 522(f) formula results in full avoidance in the same example. Using the *Brantz* formula: the value of $50,000 minus $40,000 equals $10,000; subtracting the exemption of $10,000 from the $10,000 remainder equals zero, which is not a positive figure. Therefore, the judicial lien could be avoided in full. Applying the new § 522(f) formula: all liens and the exemption amount yields a sum of $70,000. Subtracting the value of $50,000 from $70,000 yields an impairment of $20,000. Since the judicial lien is also $20,000, it can be avoided in its entirety.

In other words, the only reason the judicial lien in the example was avoided in its entirety was because there was no surplus equity ($50,000 minus $40,000 minus $10,000 equals $0). *See Nielsen,* 197 B.R. at 669 n. 3. That is not the case in this appeal where there is surplus equity ($270,000 minus $158,000 minus $75,000 equals $37,000).

While the bankruptcy court's formula yielded the same numbers, it did not go on to determine the extent of the impairment, therefore the decision did not reflect the correct principle behind the numbers. Therefore, the plain language of § 522(f) requires that the bank's lien is not impairing

Debtors' exemption in the amount of $33,183, and to that extent it cannot be avoided. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (a statute should be interpreted according to its plain meaning).

### CONCLUSION

The bank's lien was avoidable only in part. The bankruptcy court's order avoiding the lien in its entirety is **REVERSED** and the case is **REMANDED** so that the Bank will retain a secured claim in the amount of $33,-183.